UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | 1:05-md-01720 (MKB) (VMS)<br><br>MDL No. 1720 (MKB)(VMS) |

This Document Relates To:

    ALL ACTIONS.

### JACK RABBIT'S OBJECTION TO CLASS COUNSEL'S MOTION FOR PARTIAL DISTRIBUTION

Jack Rabbit, by and through undersigned counsel, objects to Class Counsel's Motion for Partial Distribution and says:

Class Counsel's proposed holdback of $450,000,000 is methodologically flawed, vague, and unsupported by available economic data. Epiq Class Action & Claims Solutions, Inc. ("Epiq"), claims that through the use of Merchant Category Codes ("MCC"), which are available at the transaction level, Epiq has identified transactions that are "likely to be related to gasoline retailers, with varying degrees of certainty." Declaration of Loree Kovach [Doc. 9652-3], ¶¶13.c. As such, Epiq baselessly assert that this method of calculation "will result in a trust that is overfunded". *Id.*, ¶¶13.e. However, as noted by Epiq, this methodology will only be "overbroad insomuch as *Old Jericho* Plaintiffs seek to represent merchants in *Illinois Brick* repealer states, and the population

identified via MCC will not distinguish between merchants in repealer states and those which are in non-repealer states".[1] *Id.*, ¶¶13.e. Epiq and Class Counsel cannot state with any degree of certainty that this "proxy" method of calculation with result in an overfunded trust that encapsulates the national market of retail gas stations.

Similarly, Epiq cannot identify retail gas stations based upon TINs, nor can retail gas stations be "easily identified within the data available to Epiq". *Id.*, ¶¶13.b. Therefore, Epiq cannot guarantee that retail gas stations without Article III standing will not presently receive distribution from the settlement funds, outside of the proposed holdback, and consequently dilute the claims of Branded Operators with cognizable cost-plus injuries under *Illinois Brick*. Moreover, any distribution, at this time, to claimants without establishing their Article III standing and injury under prevailing antitrust guidelines, and without deference to stare decisis, will necessarily dilute the claims of absent class members with recognized injuries under *Illinois Brick*.

Further, "not all transactions have any MCC information associated with them in the available data". *Id.*, ¶¶13.c. Epiq has not provided any information concerning the percentage of transactions that do not have associated MCC information, nor has Epiq demonstrated to what degree the retail gas station market (and their relevant transactions), in particular, may be

---

[1] *Illinois Brick Company v. Illinois,* 431 U.S. 720, 97 SCt 2061, 52 L. Ed. 2d 707 (1977)

disproportionally impacted by the absence of available MCC information. Epiq has also declined to avail absent class members as to how MCCs are associated with gasoline retailers. Apart from a perfunctory analysis, Epiq has failed to demonstrate that their method of association is statistically significant and is likely to encapsulate the entire market of transactions for retail gas stations throughout the class period. Noticeably and conspicuously absent in Class Counsel motion and Epiq's supporting declarations is any economic and industry data that would support the proposed holdback as being an accurate or approximate representation of the market for retail gas station transactions for the duration of the class period. Consequently, it is not possible to establish with any certainty or conviction that the proposed holdback for Branded Operators is fair, reasonable, and adequate.

Lacking a crystal ball, it is not possible for the Court, Class Counsel, the Claims Administrator, or the Objector to predict the future outcome of the pending Second Circuit Appeals In Re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation, Docket #: 24-1653[2] and Old Jericho Enterprise, Inc. et al v. Visa, Inc., Mastercard Inc. Docket #: 24-2678. The cases have not been consolidated, but they will be heard in tandem, per Order of the Court, [ACMS Docs. 148 and 149 in 24-1653] [ACMS 89 in 24-2678]. Although on July 9, 2025, the appellate court proposed an October 13, 2025

---

[2] On July 8, 2024, Jack Rabbit's appeal, Docket #: 24-1808 was combined with Docket # 24-165.

3

oral argument date, [ACMS Doc. 150 in 24-1653] [ACMS 90 in 24-2678], that date was never finalized, and a firm date has yet to be set.

Whether the Second Circuit will require all class members to have Article III standing remains a contentious issue. ~~The~~ Article III standing remains informed by *Illinois Brick*, as the Second Circuit explained in *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023):

> True, the word "accepted" lends itself to ambiguity. But the district court properly concluded that "the class definition is . . . objectively guided by federal antitrust standards." Final Approval, No. 05-md-1720, 2019 WL 6875472, at *31 (internal quotation marks omitted).**⁵** *see also In re Motorola Sec. Litig., 644 F.3d 511, 517 (7th Cir. 2011)* ("**[A]s a general rule, a class definition is interpreted according to the substantive law that provides the basis for the class action.**"). In view of those standards, **the district court accepted Class Counsel's claim that "they represent only . . . the direct purchaser, and not every entity in the payment chain."** Final Approval, No. 05- 2 md-1720, 2019 WL 6875472, at *31 (internal quotation marks omitted). **Put differently, the district court found that federal antitrust law clarified that the only entities that could fall within the class definition were those deemed to be direct payors of the challenged fees.** …
> 
> **⁵** No party to this appeal disputes that "for any given transaction, only one interchange fee was paid and only one claimant is entitled to recover based on that fee." Defendants' Br. at 31; *see also* Jack Rabbit Br. at 38, 55 ("Pursuant to *Illinois Brick*, there can only be one claim per antitrust injury."). We therefore accept that interpretation of federal antitrust law for the purposes of this appeal, without opining on its soundness.³

---

³ During the class period, Jack Rabbit together with over 150,000 other Retail Gas Stations in the United States, of which 62.1%, i.e., 93,150 Retail Gas Station franchisees owned a single station. These Retail Gas Station franchisees were members of the Settlement Class, and eligible to make a claim, pursuant to the *Illinois Brick* cost-plus exception to the direct purchaser rule.

Until the Second Circuit, or the U.S. Supreme Court[4] decides who is - and who is not - a Settlement Class member, no funds should be released in a partial distribution.

Last, as previously noted by the Second Circuit in *Fikes*, Class Counsel is conflicted as to the divergent interests of absent class members:

> "[u]ntil now, there has been no conflict between franchisors and franchisees. To the contrary, they have shared an interest in maximizing the recovery for all class members, which each claims to be. **Going forward, however, franchisors and franchisees will become adverse to each other for resolution of the questions regarding which should be deemed to have accepted the cards and therefore to come within the class and receive settlement funds, and how those funds should be allocated. It appears that class counsel will be conflicted on those questions**. The district court should ensure that franchisors and franchisees will be represented by counsel, enabling each side to present arguments to the special master and the district court as to why they should be favored over the adversary, and enabling them to negotiate toward settlements of the disputes affecting each adverse pair.
> Whether this will require designations of subclasses and appointment of further counsel to represent them or whether their existing

---

[4] "On the merits, I agree with Labcorp and the United States as amicus curiae: Federal courts may not certify a damages class under Rule 23 when, as here, the proposed class includes both injured and uninjured class members.

Rule 23 and this Court's precedents make this a straightforward case. Rule 23 authorizes damages class certification only when common questions of law and fact predominate. A damages class consisting of both injured and uninjured members does not meet that requirement.

As the Government succinctly and correctly stated at oral argument, "if there are members of a class that aren't even injured, they can't share the same injury with the other class members." Tr. of Oral Arg. 83; *see generally Comcast Corp. v. Behrend*, 569 U. S. 27 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 564 U. S. 338 (2011); *Amchem Products, Inc. v. Windsor*, 521 U. S. 591 (1997); *General Telephone Co. of Southwest v. Falcon*, 457 U. S. 147 (1982).
*Lab'y Corp. of Am. Holdings v. Davis*, 145 S. Ct. 1608, 221 L. Ed. 2d 948, 2025 U.S. LEXIS 2200, 2025 LX 178139, 31 Fla. L. Weekly Fed. S 45 (June 5, 2025). Justice Kavanaugh, dissenting.

5

> privately retained counsel will adequately serve the needs, we leave to the good judgment of the district court."
> *Id.* Pages 25-26 (emphasis added)

Here too Class Counsel is conflicted as to the interests of Branded Operators, who seek the resolution of their appeal, and absent class members who are prepared to receive their pro-rata distribution from the settlement fund. As such, this Court must appoint a Sub-Class representative and Counsel for Branded Operators to safeguard their interests; and alternatively, if the Court authorizes a partial distribution, the Court must appoint Counsel for Branded Operators to ensure that the proposed holdback is fair, reasonable and adequate and reflects the full value of claims of retail gas stations for the duration of the class period.

## **WHEREFORE**

WHEREFORE, Objector Jack Rabbit respectfully requests that this Court grant the following relief:

a. Deny Class Counsel's Motion for Partial Distribution; Or

b. If this Court is inclined to grant Class Counsel's request for relief, then before doing so this Court should appoint independent counsel to ensure the proposed holdback for Branded Operators is fair, reasonable, and adequate.

6

Dated this 29th day of August 2025.

Respectfully Submitted,

| | |
|---|---|
| _/s/ Paul S. Rothstein_<br>Attorney Paul S. Rothstein<br>Florida Bar Number: 310123<br>Attorney for Class Members/Proposed Plaintiffs In Intervention Jack Rabbit, LLC & 280 Station LLC (d/b/a/ Cowboys)<br>Attorney Paul S. Rothstein, P.A.<br>626 N.E. 1st Street<br>Gainesville, FL 32601<br>(352) 376-7650<br>(352) 374-7133 (Fax)<br>E-Mail:  psr@rothsteinforjustice.com | _/s/ N. Albert Bacharach, Jr._<br>N. Albert Bacharach, Jr.<br>Florida Bar Number: 209783<br>Attorney for Class Members/Proposed Plaintiffs In Intervention Jack Rabbit, LLC & 280 Station LLC (d/b/a/ Cowboys)<br>N. Albert Bacharach, Jr., P.A.<br>4128 NW 13th Street<br>Gainesville, FL 32609-1807<br>(352) 378-9859<br>(352) 338-1858 (Fax)<br>E-Mail: N.A.Bacharach@att.net<br>          CourtDocuments@nabjr.com |

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on August 29, 2025, I electronically filed the foregoing JACK RABBIT'S OBJECTION TO CLASS COUNSEL'S MOTION FOR PARTIAL DISTRIBUTION with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.

_/s/Paul S. Rothstein_<br>Paul S Rothstein